# EX. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REX MINARD, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| V. | § | Civil Action No. 3:14-cv-0750-b |
| | § | |
| | § | |
| | § | |
| GREEN VAN LINES, INC., | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Comes Now, Rex Minard, Plaintiff herein, and files this his *First Amended Complaint*, and would respectfully show the Court the following:

### Parties & Service

1.  Plaintiff is Rex Minard, a citizen of the state of Texas.

2.  Defendant Green Van Lines, Inc. ("GVL" or Defendant), is a corporation formed under the laws of the State of Texas, with its principal place of business in Addison, Texas. GVL is therefore a citizen of the state of Texas.

3.  On August 20, 2013, a summons was issued. (Doc. 2.)

4.  On November 8, 2013, Defendant made an appearance. (Doc. 7.)

### Jurisdiction & Venue

5.  The United States District Court for the Eastern District of California had previously issued a show cause order, seeking clarity as to this Court's jurisdiction. (*see* Doc. 10) However, the Plaintiff did not provide any further jurisdictional allegations to his complaint in

response. (*See* Doc. 11.) The Plaintiff now provides the following expanded jurisdictional allegations to clarify the jurisdiction of the Court.

6. The court has jurisdiction pursuant to 28 U.S.C. § 1337(a), which provides, in pertinent part:

> The district courts shall have original jurisdiction of any civil action or proceeding arising under an Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies:
>
> Provided, however, That the district courts shall only have original jurisdiction of an action brought under section 11706 or 14706 of title 49, only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs.

7. Plaintiff has sued under a bill of lading. Plaintiff has been damaged in excess of $30,521 exclusive of attorney's fees and costs. In any event, attorney's fees are included in the calculation of the amount in controversy. *See Foret v. Southern Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990) (holding that attorney's fees may be included in determining the jurisdictional amount).

8. Besides the bill of lading, the parties have also entered into a separate contract, the documents comprising the contract is attached as **EX. A**. However, within the "General Agreement," the contract contains a forum selection clause which seemingly requires any litigation to occur in a Texas state court located in Dallas County, Texas.

9. The forum selection clause states: "the Customer/Shipper consents [*sic*] the jurisdiction and the venue of any court of general jurisdiction of Dallas County, Texas and any legal proceedings arising out of this Agreement shall be brought only in such courts." (*See* EX. A; *see also* Doc. 7-4.)

10. It goes without saying that federal courts "are courts of limited jurisdiction" as opposed to general jurisdiction. *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir.

1981). In Texas, state district courts have been vested with general jurisdiction. *Valdez v. Hollenbeck*, No. 13-0709, 2015 WL 3640887, at *4 note 8 (Tex. June 12, 2015) ("District courts have general jurisdiction over all civil actions, proceedings, and remedies except when exclusive jurisdiction is vested in another tribunal."); *see also Jasper Cnty. Lumber Co. v. Biscamp*, 77 S.W.2d 571, 572 (Tex. Civ. App.—Beaumont 1934) ("Under the Constitution, the district court is a court of general jurisdiction.").

11. Moreover, the phrase "*of* Dallas County, Texas," would likewise indicate that the forum selection clause required litigation to occur in the state district courts. *See Dixon v. TSE Int'l Inc.*, 330 F.3d 396, 397-98 (5th Cir. 2003) (holding that the contractual provision "The Court of Texas, U.S.A., shall have jurisdiction…" effectively waived the defendant's right to remove the case as "Federal district court may be *in* Texas, but they are not *of* Texas."); *see also Sourcecorp BPS, Inc. v. Henderson,* Case No. 308-CV-552-L, 2008 WL 4965857 (N.D. Tex. Nov. 20, 2008) (Lindsay, J.) (holding that contractual provision state that "[V]enue shall lie in the State and/or Federal Courts of Dallas[,] Texas" effectively waived the defendant's right to remove the case to federal court as federal courts are not "of" Texas.)

12. Nonetheless, jurisdiction and venue is appropriate in this Court, notwithstanding any forthcoming motion from the Defendant to dismiss for *forum non conveniens*, pursuant to the doctrine of judicial estoppel. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of* Texas, 134 S.Ct. 568, 580, 187 L. Ed. 2d 487 (2013) ("…the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*.)

13. Judicial estoppel requires (1) the position of the party to be estopped be clearly inconsistent with its previous position, and that (2) the party convinced the court originally hearing the matter to accept that previous position. *GP Plastics Corp. v. Interboro Packaging Corp.*, 108

F. App'x 832, 835 (5th Cir. 2004). Here, the Defendant filed a motion seeking to transfer the case from the United State District Court for the Eastern District of California to this court pursuant to the forum selection clause referenced above. (Doc. 7 at p. 6, ln. 23-28.) The court was convinced by the Defendant's argument and granted the motion because of the forum selection clause. (Doc. 13 at p. 4, ln. 1-7.) Defendant has thus successfully argued that this Court had jurisdiction and that venue was appropriate in the Northern District of Texas. (Doc. 13 at p. 2, ln. 22-23 ["The Northern District of Texas is the Correct Venue for this Action"].) Therefore, the Defendant should be estopped from making any argument that the case should be dismissed pursuant to the forum-selection clause.

14.     In sum, the Plaintiff has sufficiently invoked this Court's jurisdiction pursuant to 28 U.S.C. § 1337(a), and the Defendant will be estopped from seeking to have the case dismissed pursuant to the forum selection clause contained in the contract.

### Facts

15.     On or around July 5, 2011, Plaintiff was preparing to move with his wife and granddaughter from Floresville, Texas to Plumas Lake, California. Plaintiff contacted GVL to transport Plaintiff's personal items to their new residence.

16.     Rocky Thornton, a Relocation Consultant for GVL, provided Plaintiff with a "binding estimate" for the moving services, including a "guaranteed rate" of $8,208.74 and GVL's terms and conditions of service. This constituted an offer by GVL, which Plaintiff accepted thereby creating a contract between the parties.

17.     Pursuant to the estimate, Plaintiff promised to pay the quoted amount of $8,208.74. In exchange, GVL promised to provide moving services, which included, but was not limited to, loading and unloading items, supplying and using protective padding and tape for non-fragile

items, basic disassembling and reassembling of furniture, up to 30 days of free storage, truck fee, fuel, mileage, tolls, taxes, and delivery in Plaintiff's new home, and valuation coverage of .60 cents per pound per article up to $10,000.

18. The terms of the contract also included affirmative representations by GVL that it "provides a quality service unparalleled by any other moving company" and "hires and trains the best and most experienced movers in the industry" and that its "professional movers go through an extensive training process…to minimize damages to you belongings." The contract also included a statement that the terms provided therein are "Green Van Lines policies and are not negotiable."

19. Plaintiff received price quotes from multiple moving service companies, but elected to use the services of GVL not because GVL was the cheapest option (it was not), but because GVL's representations that it provided exceptional service and used its own extensively-trained movers.

20. On July 21, 2011, GVL picked up the items to be moved from Plaintiff's old residence in Floresville, Texas. Although GVL stated that its movers would arrive between 7:00 a.m. and 9:00 a.m., the movers did not arrive until after noon. The movers did not finish loading Plaintiff's items into the truck until after 11:00 p.m.

21. GVL stated that the expected date and time of delivery to Plaintiff's new home in California was August 23, 2011, between 2:00 p.m. and 6:00 p.m. GVL informed Plaintiff that this would not necessarily be the actual delivery date and assured Plaintiff that the driver would call "at least 24 hours prior to delivery."

22. On August 23, 2011, Plaintiff took the afternoon off from his new job—at which he had been employed for less than one month—in order to be at home when the truck arrived. At

approximately 5:00 p.m. that day, Plaintiff called the truck driver and was informed that the driver was still at least four hours away from Sacramento (where he would need to stop before delivering the items to the house in Plumas Lake). The driver gave Plaintiff a new delivery window of the following day, August 24, 2011, between the hours of 7:00 a.m. and 10:30 a.m. The driver, of course, failed to provide the promised 24-hour notice prior to delivery and thereby caused Plaintiff to unnecessarily take time off from work.

23.     Plaintiff notified his employer that he would need to take the morning of August 24, 2011, off but would be in that afternoon. That morning, at approximately 9:30 a.m., Plaintiff again called the truck driver and learned that he was still in Sacramento waiting for laborers to arrive and would again miss the delivery window. Plaintiff was then forced to take the remainder of that day off from work as well.

24.     The truck arrived at approximately 11:00 a.m. with the driver and two movers. The truck did not have any GVL company labeling or markings and neither the driver nor movers wore GVL uniforms or showed any other indicator that they had been hired and trained by GVL (apart from supplying GVL's bill of lading). As soon as the rear door of the truck was opened, it became apparent that the items had not been properly loaded and secured, as several items had seemingly fallen over and shifted around during the move. Moreover, several items, including some boxes marked "fragile," were loaded underneath other items in a manner that was likely to (and did in fact) cause damages to the items.

25.     The driver and movers then began unloading the truck, using improper and unprofessional methods, such as rolling heavy boxes and other items end over end (including Plaintiff's 50-inch plasm screen television) and dragging items.

26. Unsurprisingly, Plaintiff discovered that there was significant damages to a great deal of his property and that some of his items were missing. Plaintiff made note of the missing items and many of the damaged items to the driver at the time of delivery. However, Plaintiff continued to discover damaged items as he and his family gradually unpacked the items and was not aware of the full extent of the damage until over two months later. Plaintiff also discovered that one box contained a mix of Plaintiff's items and other items that did not belong to Plaintiff nor his wife or granddaughter (meaning GVL presumably opened Plaintiff's sealed box and stuffed someone else's items inside) and another box contained the garbage from GVL's employees (the box was tagged, meaning Plaintiff apparently paid to have it hauled across the country).

27. On August 25, 2011, Plaintiff emailed Mr. Thornton, the Relocation Consultant for GVL with whom Plaintiff had worked in creating the contract, and reported the problems that Plaintiff had experienced with GVL's service and the damage discovered.

28. On or before August 30, 2011, Plaintiff received multiple telephone calls from Asher Avi to discuss the damaged and lost items. Plaintiff is unaware of Mr. Avi's exact title or position, but was informed and believes thereon alleges that Mr. Avi was acting as an agent for GVL. Mr. Avi included the truck driver on one or more of these calls, and the truck driver essentially alleged that Plaintiff was a liar and was making false allegations.

29. Thereafter, Plaintiff continually corresponded with GVL, through Mr. Thornton, Hayley Smith, an Executive Assistant of GVL, and Guy Cohen, owner of GVL, among others. Ultimately, GVL rejected Plaintiff's claim in substantial part.

**Agency & Respondeat Superior**

30. Wherever it is alleged that Defendant did anything, or failed to do anything it is meant that such conduct was done by Defendant's employees, vice principals, agents, attorneys,

and/or affiliated entities, in the normal or routine scope of their authority, or ratified by Defendant, or done with such apparent authority so as to cause Plaintiffs to reasonably rely that such conduct was within the scope of their authority. Plaintiffs did rely to Plaintiffs' detriment on Defendant's representatives being vested with authority for their conduct. Defendant is vicariously liable for the conduct of its employees, vice principals, agents, attorneys, affiliated entities, and representatives of Defendant's affiliated entities by virtue of respondeat superior, apparent authority and estoppel doctrines.

## Carmack Amendment

31.     Plaintiff re-alleges and incorporate by reference all proceeding paragraphs as though fully set forth herein.

32.     The elements of a Carmack claim are (1) delivery of goods in good condition, (2) receipt by the consignee of less goods or damaged goods, and (3) the amount of damages. *See Accura Systems, Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 877 (5th Cir. 1996).

33.     Plaintiff delivered his household goods to Defendant for packing, handling, and shipping in good condition. Defendant delivered the goods back to Plaintiff in a damaged condition or in some instances the goods were missing altogether. The Plaintiff has been damaged in the amount of $30,521, for his lost and damaged goods, not including attorney's fees or costs.

## Fraudulent Inducement

34.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

35.     The elements of fraud in the inducement are (1) the defendant made a material misrepresentation that was false, (2) that the defendant knew was false when made or made it recklessly as a positive assertion without any knowledge of its truth, (3) the defendant intended to

induce the plaintiff to act upon the representation, and (4) the plaintiff actually justifiably relied upon the representation, and thereby suffered injury. *See Taft v. Sherman*, 301 S.W.3d 452, 457 (Tex. App.—Amarillo 2009, no pet.) Moreover, "[f]raudulen inducement…is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001).

  36. Defendant represented in its binding estimate that it:

> Hires and trains the best and most experienced moves in the industry and provides a quality service unparalleled by any other moving company. Our professional movers go through an extensive training process in which they learn to effectively and safely disassemble and reassemble your furniture and protect your possessions with blankets, pads, shrink wrap and tape. Our movers learn what can and cannot be stacked to minimize potential damages to your belongings. They have the experience required to effectively package and protect your fragile possessions like glass top tables, mirrors, picture frames, televisions and antiques. The maneuvering and handling of your Piano or other bulk items is an art form that is lost amongst most moving companies, but mastered at Green Van Lines! Whether you rea looking for local Dallas moves or you are relocating across this great country, Green Van Lines will get you there quickly, safely and affordably!

  37. Given the state of disarray the Plaintiff discovered his personal property in upon delivery and the unprofessional and harmful manner in which his property was unloaded, on information and belief, Defendant does not hire professional movers, does not in fact train its movers, and does not put its movers through an extensive training process in which they learn to effectively and safely disassemble and reassemble furniture and otherwise protect customer property. Defendant made its misrepresentations either knowingly or recklessly. Defendant intended the Plaintiff to rely on these representations. Plaintiff in fact justifiably relied on these representations and agreed to contract with the Defendant, and was thereby damaged. Plaintiff paid a premium to GVL for its moving services because he was motivated to have his property safely moved to his new home by experienced movers and not just day laborers with no experience or skill in packing, shipping, and unloading personal property. Plaintiff was damaged in the amount

of the overcharge for services not rendered. Plaintiff asks that the contract between the parties which contains a limited liability provision be rescinded so that it may not act as an exculpatory clause in connection to the Defendant's fraud.

## Violations of the DTPA

38. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

39. Defendant's conduct as described above constitute a violation of the following provisions of the Deceptive Trade Practices Act ("DTPA"):

 a. TEX. BUS. & COM. CODE § 17.46(b)(5) which prohibits representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not ha or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

 b. TEX. BUS. & COM. CODE § 17.46(b)(9) which prohibits advertising goods or services with intent not to sell them as advertised;

 c. TEX. BUS. & COM. CODE § 17.46(b)(24) which prohibits not disclosing information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed; and

 d. TEX. BUS. & COM. CODE § 17.50(a)(3) which allows a consumer to recover for any unconscionable action or course of action taken by any person. An "unconscionable action or course of action" is defined by TEX. BUS. & COM.

CODE § 17.45(5) as an act or practice, experience, or capacity of the consumer to a grossly unfair degree.

40. Given the state of disarray the Plaintiff discovered his personal property in upon delivery and the unprofessional and harmful manner in which his property was unloaded, on information and belief, Defendant does not hire professional movers, does not in fact train its movers, and does not put its movers through an extensive training process in which they learn to effectively and safely disassemble and reassemble furniture and otherwise protect customer property. Defendant made its misrepresentations either knowingly or recklessly. Defendant intended the Plaintiff to rely on these representations. Plaintiff in fact relied on these representations and agreed to contract with Defendant, and was thereby damaged. Plaintiff paid a premium to GVL for its moving services because he was motivated to have his property safely moved to his new home by experienced movers and not just day laborers with no experience or skill in packing, shipping, and unloading personal property.

41. Plaintiff was damaged in the amount of the overcharge for services not rendered and mental anguish. Plaintiff asks that the contract between the parties which contains a limited liability provision be rescinded so that it may not act as an exculpatory clause in connection to the Defendant's deceptive trade practices. *See* TEX. BUS. & COM. CODE § 17.50(b)(3)-(4). Plaintiff also suffered mental anguish as a result of the acts and omissions described above. Defendant's violations of the DTPA were knowing and intentional and thus Plaintiff is entitled to an award of mental anguish as well as having his economic and mental anguish damages trebled. TEX. BUS. COM. CODE § 17.50(b)(1).

**Negligent Misrepresentation**

42. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

43. The elements of a negligent misrepresentation cause of action consist of (1) defendant's representation to a plaintiff in the course of defendant's business or in a transaction in which the defendant had an interest; (2) defendant's providing false information for the guidance of others; (3) defendant's failure to exercise reasonable care or competence in obtaining or communicating information; (4) plaintiff's justifiable reliance on defendant's representation; and (5) defendant's negligent misrepresentation proximately causing the plaintiff's injury. *Willis v. Marshall*, 401 S.W.3d 689, 698 (Tex. App.—El Paso 2013, no pet.).

44. Given the state of disarray the Plaintiff discovered his personal property in upon delivery and the unprofessional and harmful manner in which his property was unloaded, on information and belief, Defendant does not hire professional movers, does not in fact train its movers, and does not put its movers through an extensive training process in which they learn to effectively and safely disassemble and reassemble furniture and otherwise protect customer property. Defendant, though its agent, Rocky Thornton, failed to exercise care or competence in obtaining or communicating the information. Defendant intended the Plaintiff to rely on these representations. Plaintiff in fact justifiably relied on these representations and agreed to contract with Defendant, and was thereby damaged. Plaintiff paid a premium to GVL for its moving services because he was motivated to have his property safely moved to his new home by experienced movers and not just day laborers with no experience or skill in packing, shipping, and unloading personal property. Plaintiff was damaged in the amount of the overcharge for services not rendered.

**Breach of Contract**

45. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

46. In the alternative to Plaintiff's causes of action seeking rescission of the contract and the limited liability provision, Plaintiff brings this claim for breach of contract.

47. The elements of a claim for breach of contract are: (1) there is a valid contract, (2) the plaintiff is a proper party to sue for breach of the contract, (3) the party performed or tendered performance, (4) the opposing party breached the contract, and (5) the party was damaged as a result of the breach. *See Hackberry Creek Country Club v. Hackberry Creek Home Owner's Ass'n*, 205 S.W.3d 46, 55 (Tex. App.—Dallas 2006, pet. denied) (elements 1, 3-5); *Perry v. Breland*, 16 S.W.3d 182, 187 (Tex. App.—Eastland 2000, pet denied) (element 2).

48. Plaintiff entered into a contract with GVL to provide moving services to Plaintiff. The contract comprises of three separate documents, the binding estimate, the order for services, and the general agreement. The Plaintiff, as the signatory on the contract, is the proper party to sue for breach of contract. The Plaintiff performed the contract by paying the amount specified in the contract to the Defendant. GVL breached the contract by not providing trained personnel to perform the move as promised and by refusing to reimburse Plaintiff for damage to Plaintiff's property at a rate of 60 cents per pound per article up to $10,000. Plaintiff was damaged by not receiving the benefit of his bargain, namely having a move performed by trained and experienced personnel and by not having his claim for damaged property paid out at the rate of 60 cents per pound per article up to $10,000.

### Gross Negligence

49. Defendant's acts and omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, Defendant had actual, subjective awareness of the risk involved in connection to its negligence, but nonetheless proceeded with conscious indifference to the rights, safety, and welfare of Plaintiffs. Accordingly, Defendant's actions and omissions constitute gross negligence. *See* TEX. CIV. PRAC. & REM. CODE § 41.001(11).

### Exemplary Damages

50. Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

51. As Defendant committed fraud and gross negligence, Plaintiff is entitled to exemplary damages. *See* TEX. CIV. PRAC. & REM. CODE § 41.003(1). Further, the conduct described above constitutes a violation of TEX. PENAL CODE § 32.46 (securing execution of document by deception). As the value of the property, service, or pecuniary interest exceed $1,500 the conduct is considered a felony. *See* TEX. PENAL CODE § 32.46(b)(4). Accordingly, the statutory cap on exemplary damages is not applicable to this case. *See* TEX. CIV. PRAC. & REM. CODE § 41.008(c)(11).

### Attorney's Fees

52. Plaintiff is entitled to recover his reasonable and necessary attorney's fees pursuant to TEX. BUS. & COM. CODE § 17.50(d), 49 U.S.C. § 14708(d), and TEX. CIV. PRAC. & REM. Code Ch. 38.

### Conditions Precedent

53. All conditions precedent have been performed or have occurred.

## Jury Demand

54. Plaintiff respectfully assert the right to a trial by jury on all triable facts.

## Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that:

a. Defendant be cited to appear and answer;

b. That the Court empanel a jury to determine any issue of fact and that upon final hearing of this cause, that the Court award Plaintiff:

    i. Actual damages, including but not limited to

        1. Economic damages;

        2. Mental anguish;

        3. Consequential damages;

        4. Out-of-pocket damages;

        5. Reliance damages;

        6. Special damages;

        7. Lost time;

    ii. Exemplary damages;

    iii. Pre-judgment and post-judgment interest;

    iv. Recession of the contract;

    v. Attorney fees; and

    vi. Court costs.

c. That the Court grant any other relief to which Plaintiffs may be entitled.

Respectfully submitted,

**THE PETTIT LAW FIRM**


By: */s/ David Urteago*
David B. Urteago
SBN 24079493
durteago@pettitfirm.com
3710 Rawlins, Suite 1050
Dallas, Texas 75219
(214) 329-0151
(214) 329-4076 (Fax)
**ATTORNEY FOR PLAINTIFF**


### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon the following *via ECF* pursuant to the Federal Rules of Civil Procedure on July 8, 2015:

Jane E. Dillinger
JANE E. DILLINGER, P.C.
5160 Village Creek Drive, Suite 100
Plano, Texas 75093
(214) 871-6005
(214) 871-6050 (fax)
jane@dillingerlaw.com
**ATTORNEY FOR DEFENDANT**

      */s/ David B. Urteago*
Counsel for Plaintiff